UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY AKIN ) | |
|     Plaintiff, ) | C.A. No. 3:16-CV-30048 |
| ) | |
| v. ) | |
| ) | **COMPLAINT AND JURY DEMAND** |
| TROOPER NOAH PACK ) | |
| TROOPER MATTHEW TROMBLEY ) | |
| DET. LT. ROBIN WHITNEY ) | |
| AND UNKNOWN MASSACHUSETTS ) | |
| STATE POLICE TROOPERS ) | |
|     Defendants. ) | |
| ) | |

## INTRODUCTION

1. This is an action for money damages for violations of the Plaintiff's constitutional rights brought pursuant to 42 U.S.C. §1983 and related state law.  Plaintiff Amy Akin alleges that Defendant Troopers Pack, Trombley, and Whitney conducted an unreasonable and humiliating public strip search of Ms. Akin in effectuating her arrest, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the Massachusetts Civil Rights Act, M.G.L. c. 12, §11I.

## JURISDICTION

2. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343, and on the pendent jurisdiction of this Court to entertain related claims arising under state law.

## PARTIES

3. Plaintiff Amy Akin is a resident of Swanzey, New Hampshire

4. Defendant Trooper Noah Pack is a trooper with the Massachusetts State Police, acting under color of law at all time relevant to this Complaint, and is sued in his individual capacity as a police officer for the Commonwealth of Massachusetts.

1

5.  Defendant Trooper Matthew Trombley is a trooper with the Massachusetts State Police, acting under color of law at all time relevant to this Complaint, and is sued in his individual capacity as a police officer for the Commonwealth of Massachusetts.

6.  Defendant Detective Lt. Robin Whitney is a trooper with the Massachusetts State Police, acting under color of law at all time relevant to this Complaint, and is sued in her individual capacity as a police officer for the Commonwealth of Massachusetts.

## FACTS

7.  The Plaintiff, Amy Akin, is a 39-year-old Swanzey, New Hampshire resident.

8.  Ms. Akin has a nursing degree, and at the time of the incident, was working as a Patient Care Assistant.

9.  On October 17, 2013, Ms. Akin was driving northbound on Route 91, near Deerfield.

10. Route 91 is a North/South running interstate, connecting Connecticut, Massachusetts, and Vermont. Near Deerfield, the highway is two-lanes wide in both directions, with the north and south portions separated by a wide median.

11. Ms. Akin was driving a green 1999 Volkswagen Jetta.

12. Ms. Espaillat was riding as a passenger in the car.

13. Ms. Akin also had her three dogs in the car.

14. Defendant Trooper Pack was patrolling on northbound Route 91.

15. Defendant Pack alleged that Ms. Akin was driving at 65 mph, but slowed her car as he approached, and crossed a marked lane.

16. Defendant Pack activated his lights to pull Ms. Akin over.

17. Ms. Akin drove a short distance, through a construction zone, and then pulled over promptly.

2

18. Defendant Pack, approaching the car, alleged that he observed Ms. Espaillat, make a motions toward her lap and toward the floor of the car or the passenger's side door.

19. Defendant Pack ordered both women from the car, in order to conduct a frisk.

20. Upon approaching the car, Defendant Pack did not see any weapons or contraband in plain sight. No details in Trooper Pack's report suggest that he smelled marijuana, fresh or burnt, or other cause to suspect drugs were present.

21. Defendant Pack first asked Ms. Espaillat to accompany him to the side of his cruiser, in order to conduct a pat frisk.

22. Defendant Pack conducted the frisk. Defendant Pack found neither weapons nor contraband. He alleged that Ms. Espaillat appeared nervous.

23. Defendant Pack then returned to Ms. Akin's car, and questioned Ms. Akin. He did not pat frisk Ms. Akin, and had not taken any steps toward issuing her a citation for the alleged driving offenses.

24. Although neither contraband nor weapons had been found on either Ms. Akin or Espaillat, and there were none in plain view, Defendant Pack requested assistance from other state troopers.

25. Defendants Trombley and Whitney responded.

26. Defendant Pack resumed questioning Ms. Espaillat. Ms. Espaillat suggested that there was a small amount of marijuana in the car.

27. Defendant Pack asked Ms. Espaillat consent to search the vehicle.

28. Ms. Espaillat did not consent to this search.

29. Defendant Pack then resumed questioning of Ms. Akin, who confirmed that there was a small amount of marijuana and a glass pipe in the car.

30. Ms. Akin also did not consent to a search of the car. Despite this, Trooper Pack searched the vehicle.

31. The search produced a small amount of marijuana – by the Trooper's own report, considerably less than an ounce – and a digital scale in the glove compartment.

32. The Defendant again asked Ms. Akin and Espaillat if they had drugs on their person. Both women denied possessing drugs, and a previous pat frisk of Ms. Espaillat had not produced any drugs.

33. Defendant Whitney then conducted a strip search of both women.

34. This search was conducted by the side of the highway, in full view of passing motorists.

35.  Ms. Espaillat's bra was searched, and her breasts were fully exposed during the search.

36. Ms. Akin watched this search occur.

37. Ms. Espaillat was arrested, and placed in the back of Defendant Pack's cruiser.

38. Defendant Pack then confronted Ms. Akin who, allegedly, made inculpatory statements about purchasing heroin.

39. Ms. Akin denies making these statements.

40. Ms. Espaillat was already under arrest and in a police vehicle.

41. There were no exigent circumstances requiring an immediate search. The Defendants had ample opportunity to transport both women to the barracks and conduct a search there.

42. The distance between the location of the stop and the Shelburne Falls State Police barracks is approximately 15 miles.

43. Despite this, the defendants decided that Ms. Espaillat and Ms. Akin should be immediately strip searched by the side of a busy highway, during rush hour.

4

44. No meaningful precautions were taken by the defendants to shield Ms. Akin from public view during this search.

45. Ms. Akin requested that the search be performed in Defendant Whitney's cruiser, to prevent her from being exposed.

46. The defendants refused this request, and Ms. Akin was instructed to stand by the open passenger door of the cruiser.

47. Ms. Akin was first ordered to raise her shirt and then raise her bra. Her breasts were fully exposed.

48. Ms. Akin was then ordered to lower her pants and her underwear.

49. When Ms. Akin, who was horrified at what was occurring, was slow to follow this order, Defendant Whitney yanked Ms. Akin's pants and underwear down to her mid-thighs. Ms. Akin's buttocks and genitals were fully exposed.

50. Although Defendant Whitney ostensibly performed this search, Defendants Pack and Twombley were standing nearby, and had a full view of Ms. Akin.

51. Further, the opened passenger door of the cruiser was ineffective, at best, in obstructing the public's view of Ms. Akin.

52. Ms. Akin heard passing cars honking at her as she stood exposed by the side of the road. She saw cars slow down to get a better look at her.

53. Ms. Akin was crying and shaking by the time she was allowed to dress.

54. No drugs were found on Ms. Akin.

55. Ms. Akin was eventually released from the scene with a summons.

56. Ms. Akin was charged with possession of class A with intent to distribute, conspiracy to violate the drug laws, and knowingly being present where heroin is kept. Ms. Akin was arraigned on February 28, 2014.

57. On July 8, 2014. All charges against Ms. Akin were dismissed. The possession and conspiracy charges were dismissed outright, and the knowingly being present where heroin is kept charge was dismissed upon court costs.

58. Ms. Akin was mortified by the experience of being forced to strip in a public place, in broad daylight.

59. Ms. Akin became anxious and depressed after the incident. She had difficulty sleeping and had nightmares about the incident.

60. These symptoms persisted for several months following the search.

61. As a result of this experience, Ms. Akin – to this day – experiences a feeling of profound panic when she sees police officers or police cars.

62. In addition, in the days following the arrest, the incident was picked up by local newspapers, and Ms. Akin's name appeared in several articles.

63. Ms. Akin was dropped by several clients in the wake of the arrest.

## COUNT I
## VIOLATION OF 42 U.S.C. §1983 (UNREASONABLE STRIP SEARCH)
## BY ALL DEFENDANTS

64. The Plaintiff restates the allegations in paragraphs 1 through 63 and incorporates said paragraphs herein as paragraph 64.

65. By the actions described above in paragraphs 1 through 64, the Defendants, acting under color of law, deprived the Plaintiff of his right to be free from unreasonable searches, in

violation of 42 U.S.C. §1983 and her Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

## COUNT II
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT: M.G.L. c. 12, §11I BY ALL DEFENDANTS

66. The Plaintiff restates the allegations in paragraphs 1 through 65 and incorporates said paragraphs herein as paragraph 66.

67. By the actions described above in paragraphs 1 through 66, the Defendants violated the Plaintiff's civil rights through threats, intimidation, and coercion, in violation of M.G.L. c. 12, §11I.

**WHEREFORE,** the Plaintiff requests that this Court award:

1.  Compensatory damages against the Defendants;

2.  Punitive damages against the Defendants;

3.  The costs of this action, including reasonable attorneys' fees; and,

4.  Such other and further relief, as this Court may deem necessary and appropriate.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded.

Respectfully submitted,
The Plaintiff Amy Akin
By her attorneys,

DATED: March 16, 2016

/s/ Jessica Hedges
Jessica D. Hedges (BBO No. 645847)
Michael Tumposky (BBO No. 660618)
James Haynes (BBO No. 676320)
Hedges & Tumposky, LLP
15 Broad Street
Boston, MA 02109
T)(617) 722-8220

7